**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KARIN RUTKO,** <br> **Plaintiff,** <br><br> **v.** <br><br> **MERCK SHARP & DOHME, LLC, *et al.*,** <br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : | **CIVIL ACTION NO. 24-CV-1187** |

**MEMORANDUM**

**GALLAGHER, J.** **OCTOBER 28, 2024**

Plaintiff Karin Rutko filed this employment discrimination case against her former employer, Defendants Merck Sharp & Dohme LLC and Merck & Co., Inc. (together "Merck"). After being served with the Complaint, Merck filed a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). (ECF No. 9.) That Motion, along with Rutko's Response and Merck's Reply, are currently before the Court. (ECF Nos. 15, 16.) For the following reasons, the Court will deny Merck's Motion and direct Merck to answer Rutko's Complaint.

## I. BACKGROUND

### A. Factual Allegations[1]

Rutko brings claims for employment discrimination and retaliation under the Americans with Disabilities Act ("ADA"). (Compl. at 1, 5.) She alleges that in 2021, Francis Stowman became the "Area Head" in charge of the department in which she was working at the time — Department 241 Sterile Supply. (*Id.* at 5.) At some point, Stowman visited Rutko's unit and

---

[1] The following factual allegations are taken from the Complaint and exhibits attached thereto (ECF No. 2). The Court adopts the pagination provided by the CM/ECF docketing system.

expressed that he "would like to have two group lead jobs for 2nd & 3rd shift to cover the weekends" given the absence of supervisory staff in the Sterile Supply Department during those shifts. (*Id.* at 5.) Rutko alleges that she had worked in Department 241 Sterile Supply for over a decade, performed and knew her job as a Support Associate well, to the point where she worked the job alone on the "Saturday 3rd shift" and served on call for three other departments when necessary. (*Id.* at 6.)

A few weeks after visiting the unit, Stowman posted "lead jobs" for the first and second shifts, but not for the third shift. (*Id.*) Rutko had expected an opportunity to be posted for the third shift, which she had hoped to bid on because it "takes you off the floor" except on an emergency basis, and would have apparently entitled her to a $5.00-an-hour raise and unlimited overtime. (*Id.*) When Rutko asked Stowman why he did not post a lead job for the third shift, he responded that he only received approval for the first and second shift. (*Id.*) Stowman also asked Rutko whether she would bid on the first shift, to which she responded, no, because she did not think she would get the job and because the second shift was better for her. (*Id.*) Rutko alleges that, at this point in the conversation, Stowman began "acting weird[, . . .] kept trying to talk [her] into the 1st shift bid," and asked her why she would want the second shift "with all [her] seniority." (*Id.*) Rutko apparently believed that Stowman was trying to dissuade her from applying for the second shift because Stowman wanted another employee, Mahammad, to get the second shift position and knew he would be applying for it. (*Id.*)

Rutko describes the hiring process as follows: The bids would stay posted for a week, after which Human Resources would review the bids and award the bid to the highest qualified "senior bidder," *i.e.*, the bidder with the most seniority, who would then have to pass a four-hour test to obtain the lead job. (*Id.* at 7.) Rutko learned that another employee was notified he was

selected to take the test for the first shift lead position. (*Id.*) A day or two later, Stowman asked to see Rutko, but rather than telling her that she was selected to take the test as she anticipated, he told her she would be suspended for fifteen days for an attendance issue, which disqualified her from being awarded the lead job for the second shift. (*Id.*) Rutko alleges that prior to Stowman's arrival, the company took five of her vacation days when it "made [her] stay home because [her] son had covid," but apparently forgot to put the days back in the system. (*Id.*) Rutko, through her shop steward, attempted to explain this situation to Stowman, but claims that he "would no[t] listen to what happened" and was "adamant" about giving her a suspension. (*Id.*)

The day before she was out for her suspension, Mahammad informed his colleagues that "he was awarded the lead job on 2nd." (*Id.*) Rutko alleges she learned that Stowman had called Human Resources to tell them that she "can't have the job because [she has] restrictions and [can not] perform [her] job" despite allegedly knowing that Rutko performs her job duties every night. (*Id.*) Rutko further alleges that she is fully capable of doing her job and that Stowman nevertheless denied her a promotion based on restrictions previously placed on her as a result of a prior injury. (*Id.* at 10.) Specifically, Rutko alleges that she sustained an injury to her left shoulder at work in 2007 for which she received medical treatment. (*Id.* at 8.) She describes the injury as chronic and alleges that "over use knots up [her] shoulder and pushes on the nerve," which makes her hand "fall asleep." (*Id.*)

Rutko provides context to the previous work restrictions. In 2010, she was selected for a Support Associate position with Department 241 Sterile Supply, and was initially assigned to the Break Down Pod, which required her to "break down dirty equipment." (*Id.* at 9.) After her shoulder "knotted up" in 2011 at a time when Rutko was working double shifts and overtime,

Rutko saw a doctor who recommended a break "from the repetitious work 16 hours a day." (*Id.*) The doctor placed certain restrictions on Rutko, which were accommodated by her supervisor at the time. (*Id.*) Rutko later transferred to a position in the Autoclave Pod and claims that she has "not had any issues working in [that] pod for the last 9 years and with no one helping [her]." (*Id.*) This is the location where Rutko worked at the time she was not selected for the lead job on the second shift. (*Id.* at 9-10.)

Rutko filed a grievance against Stowman in 2021, after being denied the bid. The union and Merck agreed to arbitration after her grievance was denied. (*Id.* at 3.) Rutko alleges that, after her arbitration, "they lied about everything" and did nothing after fourteen months. (*Id.* at 10.) She alleges that she "lifted [her] restriction because the job was not repetitious," but that Merck still would not promote her. (*Id.*) Rutko claims that when she asked for a reason that she was not promoted, she was sent the test for the job, which she passed. (*Id.*) At that point, Rutko was awarded the lead job for the second shift, but before her shift started, she "was laid off and the 2nd shift lead job was terminated." (*Id.*)

Rutko brings ADA claims based on these allegations. (Compl. at 1; *id.* at 10 (alleging that Merck "purposely and vindictively use[d] [her] restrictions against [her]" in denying her a promotion to a job she was essentially already doing).) She seeks relief in the form of lost wages, among other things. (*Id.* at 11.) Rutko attached various documents as exhibits to her Complaint in support of her claims. Among those exhibits are a charge of discrimination Rutko filed the with Equal Employment Opportunity Commission ("EEOC") claiming, among other things, that she was not promoted despite having ten years of seniority over the person who received the promotion (and who was not disabled) because her employer believed that her disability prevented her from performing the job, and that she was then retaliated against for

filing a grievance with her union about the situation. (ECF No. 2-1 at 9-10.) She also included as exhibits copies of position descriptions, (*id.* at 3-5), an unsigned letter allegedly authored by the shop steward who assisted Rutko with her grievance and helped her through the process, (*id.* at 6-7), and a "Notice of Right to Sue Letter" from the EEOC dated December 18, 2023, (*id.* at 1-2).

**B. Procedural History**

After being served, Merck filed a Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e). Merck alleges that they cannot respond to Rutko's allegations because her handwritten narrative is "vague and ambiguous, illegible and/or irrelevant to her claims" and because "[t]aken as a whole, . . . the Complaint in its current state is incomprehensible." (ECF No. 9-1 at 1.) Merck further alleges that it cannot respond to the Complaint because Rutko has failed to separate her allegations into numbered paragraphs in accordance with Federal Rule of Civil Procedure 10, "making it impossible" for Merck to respond. (*Id.* at 6.)

In her response, Rutko reiterates the factual basis for her ADA discrimination and retaliation claims in numbered paragraphs. (ECF No. 15.) She alleges that when she was working in Department 241 in 2021, Stowman[2] opened two lead jobs that were put up for bid "to any qualifying person with the highest seniority." (*Id.*) Although she claims to have been a qualified employee with the most seniority, the position was awarded to another employee with "a significantly less amount of seniority." (*Id.*) Rutko filed a grievance through her shop steward. (*Id.*) She allegedly learned through the grievance process that when Human Resources

[2] Stowman's name is spelled "Stoman" in Rutko's Response. (ECF No. 15.) The Court will use the spelling in the Complaint for consistency.

informed Stowman that Rutko "was to be awarded the bid," Stowman responded that Rutko was not eligible for the promotion "due to [her] restrictions" even though he allegedly knew that she was qualified to "proficiently perform the job duties of a support associate/group lead position." (*Id.*) Stowman allegedly pressured the shop steward to drop the grievance, but he declined to do so, and the matter went to arbitration. (*Id.*) The arbitrator allegedly issued a split ruling that in part required Merck to "come up with reasonable accommodations" that would permit Rutko to be awarded the position. (*Id.*) Rutko contends she was finally promoted to the lead position in January 2023 and that five minutes before she started the position, she was told that her position "is being terminated in its entirety" and that she would be laid off. (*Id.*)

In their Reply, Merck alleges that Rutko's Response "is styled more similarly to an Amended Complaint" and although they characterize it as "flawed," they "believe that they can respond to it and are willing to accept it as [Rutko's] Amended Complaint." (ECF No. 16.) Accordingly, Merck asks the Court to issue an order docketing Rutko's Response as the Amended Complaint in this case and permitting them to respond just to that document.

## III. STANDARD OF REVIEW

A party may "move for a more definite statement of a pleading" in response to a pleading that is "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement under Rule 12(e) is "the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief" when a pleading does not disclose the facts underlying a plaintiff's claims. *Thomas v. Indep. Twp.*, 463 F.3d 285, 301 (3d Cir. 2006). Such a motion "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." *Wadhwa v. Sec'y, Dep't of Veterans Affs.*, 505 F. App'x 209, 214

(3d Cir. 2012) (*per curiam*) (quoting *Schaedler v. Reading Eagle Publ'n Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)).

"Motions for a more definite statement are highly disfavored, as Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Altimari v. Bucks Cnty. R.R. Pres. & Restoration Corp.*, No. 21-2451, 2022 WL 1748534, at *3 (E.D. Pa. May 31, 2022) (internal quotations omitted). "Thus, a court should grant a motion pursuant to Rule 12(e) only 'if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading.'" *Id.* (quoting *S.E.C. v. Saltzman*, 127 F. Supp. 2d 660, 668 (E.D. Pa. 2000)); *see also Seamans v. Tramontana*, No. 13-0698, 2013 WL 5728670, at *3 (M.D. Pa. Oct. 22, 2013) ("[T]he pleading must be so unintelligible that a court cannot determine one or more potentially valid claims on which a party may proceed to require a more definite statement."); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003) ("The prevailing standard employed by district courts in this Circuit is to grant such a motion when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." (cleaned up)). Although an unrepresented litigant "cannot flout procedural rules," courts must construe a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). Whether to grant a Rule 12(e) motion based on a litigant's failure to comply with the procedural rules governing pleading is "a matter committed largely to the discretion of the district court." *MK*

*Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737, 232 (D.N.J. 2008) (quoting *Clark*, 213 F.R.D. at 232).

## IV. DISCUSSION

### A. Procedural Standards

Federal Rule of Civil Procedure 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). The rule "imposes minimal burdens on the plaintiff at the pleading stage." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quotations omitted). "Fundamentally, Rule 8 requires that a complaint provide fair notice of what the claim is and the grounds upon which it rests." *Id.* (cleaned up and quotations omitted).

"The circumstances surrounding the particular pleading, including the nature of the action, the sort of relief being sought, the availability of information, and other practical considerations must guide the inquiry into whether [a] litigant's statement of his claim qualifies as 'short and plain.'" *Id.* at 93. In other words, courts assess whether a complaint complies with Rule 8 on a case-by-case basis, keeping in mind that there is "no single proper length for stating a particular claim" and that a pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" *Id.* at 93-94 (internal quotations omitted); *see also Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (holding that a district court abuses its discretion by "dismiss[ing] a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading"); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (explaining that dismissal pursuant to Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague,

or otherwise unintelligible that its true substance, if any, is well disguised"). Rule 8's "standard operates in tandem with that of Rule 10," which requires that a complaint contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10). In determining whether to dismiss a complaint for violation of procedural rules, the inquiry is "whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims" such that the pleading "presents cognizable legal claims to which a defendant can respond on the merits." *Garrett*, 938 F.3d at 93-94 (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (*per curiam*)). Additionally, Rule 8 permits a plaintiff to plead her claims "alternatively or hypothetically," even if those claims are inconsistent. Fed. R. Civ. P. 8(d)(2); *see also Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) ("Pleading in the alternative under Fed.R.Civ.P. 8(d)(2) is, of course, permissible." (citing *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265-66 (E.D. Pa. 2007)).

**B. Standards Governing ADA Discrimination and Retaliation Claims**

Rutko used the Court's form complaint for filing an employment discrimination case to prepare her claims. By checking the relevant lines on the form, she made clear that she is bringing ADA claims for discrimination and retaliation based on Merck's failure to promote her. (Compl. at 1, 2, 5.) Accordingly, the standards governing ADA discrimination and retaliation claims are relevant to whether Rutko's Complaint puts Merck on reasonable notice of the grounds upon which her claims rest.

To state a plausible discrimination claim under the ADA a plaintiff must allege that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the

essential functions of the job, with or without a reasonable accommodation; and (3) she suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (explaining that "[t]o defeat a motion to dismiss, it is sufficient to allege a prima facie case . . . [b]ut it is not necessary."). Discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

A plaintiff is disabled within the meaning of the ADA if she (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman*, 961 F.3d at 245 (citing 42 U.S.C. § 12102(1)). To state a "record of" claim under the ADA's second definition of disability, a plaintiff must allege that she had a "history of, or had been misclassified as having, an impairment that substantially limited a major life activity." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 437 (3d Cir. 2009) (quotations and alteration omitted); *see also Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 n.3 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(k)(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A plaintiff need not "go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations" at the pleading stage to state a plausible ADA claim, provided she identifies an impairment and alleges facts from which limitations could be inferred. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

In contrast, "[a] plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Eshelman*, 961 F.3d at 245 (quoting 42 U.S.C. § 12102(3)) (alterations in original); *see also Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) ("The test [for a "regarded as" claim] is whether the employer perceived [the employee] as impaired, whether or not the perceived impairment limits or is perceived to limit a major life activity." (quotations and alteration omitted)). "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements." *Eshelman*, 961 F.3d at 245 (quotations and alteration omitted).

The ADA's antiretaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a retaliation claim under the ADA, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation discovery will reveal: (1) that she engaged in a protected employment activity under the ADA; (2) that the employer took an adverse employment action against her; and (3) a causal link between the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). "Protected activities under the ADA generally include: '(1) opposition to a practice made unlawful under the ADA; and (2) participation in an ADA investigation, proceeding, or hearing by making a charge, testifying, or otherwise assisting

in the investigation.'" *Leffert v. Walmart Inc.*, No. 23-2815, 2023 WL 8810790, at *3 (E.D. Pa. Dec. 20, 2023) (quoting *Kaniuka v. Good Shepherd Home*, No. 05-2917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006)).

**C. Application to Rutko's Complaint**

The key question raised by Merck's Motion is whether Rutko's Complaint, liberally construed, puts Merck on fair notice of the factual basis for Rutko's ADA discrimination and retaliation claims such that Merck can meaningfully respond. The Court concludes that it does.

By checking the relevant lines on the Court's form complaint, Rutko indicates that her claims are based on Merck's "failure to promote [her]," "failure to reasonably accommodate [her] disability," and "retaliation," based on discriminatory conduct that began on or about September 30, 2021. (Compl. at 2, 5 (capitalization omitted).) Specifically, Rutko alleges that in 2007, years prior to the allegedly discriminatory conduct, she sustained a "chronic" shoulder injury that worsened in 2011 when it "knotted up," causing a doctor to impose certain restrictions on her ability to perform repetitious tasks, and which were accommodated by her then-supervisor. (*Id.* at 7-9.) According to the Complaint, Rutko later transferred to a position in the Autoclave Pod, where she was working as a Support Associate in Department 241 Sterile Supply at a job she claims to have regularly performed without issue for nine years—at times on her own—when Stowman posted opportunities for lead jobs on the first and second shifts that were to be awarded to the qualified bidder with the most seniority. (*Id.* at 5, 7, 9.) Rutko allegedly had conversations with Stowman that led her to believe Stowman sought to dissuade her from applying for the second shift opportunity because he wanted to give it to another employee, Mahammad, but she nevertheless bid on the second shift position. (*Id.* at 6-7.) Around the time when decisions were made regarding the first shift position, Rutko claims that Stowman

suspended her in error based on an improper assessment of her leave record, and that the suspension prevented Rutko from being selected for the second shift lead job. (*Id.* at 7-8.) Consistent with Rutko's suspicions, Mahammad was awarded the lead job. (*Id.* at 7.) Rutko also claims to have learned that Stowman told Human Resources she could not "have the job because [she has] restrictions" that prevented her from performing the job, even though he allegedly knew this to be untrue. (*Id.* at 7; *see also id.* at 10 ("Mr. Stowman knows I[] am very capable of doing my job but purposely and vindictiv[e]ly use[d] my restrictions against me for a promotion on a job I would be doing less of because one day if [there was] an emergency I would have to do the job I'm doing.").)

Rutko alleges that she filed a grievance against Stowman in October 2021. (*Id.* at 3.) She claims her grievances were denied and that Merck and the union agreed to arbitration. (*Id.*) It appears that the process continued for several months, (*id.* at 3), during which Rutko claims to have "lifted [her] restriction because the job was not repetitious," (*id.* at 10). The Complaint alleges that Merck eventually permitted Rutko to take the test for the lead job and promoted her but then laid her off just before her shift started by eliminating the second shift lead position. (*Id.* at 10).

Although the factual narrative supporting her claims could have been written more clearly and arguably includes details that may not be necessary, a reader can discern the factual basis for Rutko's ADA claims from her narrative statement and the manner in which she has told her story. The crux of Rutko's allegations make reasonably apparent that she is claiming: to have been denied a promotion (the second shift lead job); for which she was qualified (because she performed her job as a Support Associate on the unit without issue for nine years and had the most seniority according to Human Resources); based on a disability (her shoulder injury), a

record of a disability (restrictions on repetitive work after a 2011 exacerbation of her shoulder injury when she was working on another unit), or because she was regarded as having a disability (Stowman's alleged instruction to Human Resources that Rutko's restrictions, which she claims were not applicable, prevented her from performing the second shift lead job). She also claims to have been retaliated against for grieving her non-promotion by being given the second shift lead position after an arbitration process only to be laid off shortly before she started.

These are not "discursive and confusing factual allegations and legal theories" as Merck posits, (ECF No. 9 at 1), but rather a reasonable attempt by a litigant who is representing herself to describe what happened to her and explain why she is suing her former employer for discrimination and retaliation in violation of the ADA. Rutko used the Court's form for employment discrimination to craft her Complaint, which helped clarify the legal basis for her claims. Additionally, Rutko's narrative statement of events, while not enumerated as required by Rule 10, spans only five pages and translates into a comprehensible narrative. Her case is therefore distinguishable from those in which courts have dismissed complaints under Rule 8 due to their length or incomprehensible nature. *See e.g.*, *Okogun v. Trustees of Princeton Univ.*, No. 23-2402, 2024 WL 1427585, at *2 (3d Cir. Apr. 3, 2024) (*per curiam*) (affirming dismissal of pleading for failure to comply with Rule 8 where the pleading was "160 dense pages, [and covered allegations] spanning five years and discussing dozens of incidents, individuals, and seemingly unrelated observations" including a "74-page causes of action section" with claims including "nested references to other paragraphs throughout" that either did not "connect to any factual allegations or refer[red] to dozens of pages of text that cover many unrelated events"); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006), *aff'd,* 242 F. App'x 833 (3d

Cir. 2007) (cited by Merck) (dismissing complaint pursuant to Rule 8 where the court was "unable to decipher how Plaintiff contends Google has violated the racketeering and civil conspiracy laws"). That Rutko's allegations may support more than one legal theory is also not a basis for dismissal because Rule 8 permits her to plead in the alternative. *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1999) ("The possibility that a plaintiff will bring both an actual disability and a 'regarded as' claim is simply one allowed by the law."); *Jacoby v. Bethlehem Suburban Motor Sales*, 820 F. Supp. 2d 609, 621 n.8 (E.D. Pa. 2011) ("[A] plaintiff can proffer both a theory that he has an actual disability and a theory that he is regarded as disabled."). Additionally, although Merck's Motion appears to be in part based on its desire to raise a statute of limitations defense,[3] a plaintiff is not obligated to "plead around an affirmative defense in [her] complaint," so Rutko need not amend her Complaint on that basis. *Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014) (explaining that requiring a plaintiff to plead around the statute of limitations was "inconsistent with Rules 8 and 12(b)(6)" and precedent); *see also Acrison, Inc. v. Rainone*, No. 22-3274, 2023 WL 8166786, at *2 (3d Cir. Nov. 24, 2023) ("[I]t is well established that 'a complaint need not anticipate or overcome affirmative defenses.'" (quoting *Schmidt*, 770 F.3d at 252)); *Wiggins v. Albert Einstein Med. Ctr.*, No. 20-3129, 2022 WL 1197015, at *2 (3d Cir. Apr. 22, 2022) (*per curiam*) (reversing dismissal of *pro se* employment discrimination complaint on a motion to dismiss because it was not plaintiff's burden to plead his arguments on equitable tolling at the pleading stage of the litigation).

Although Rutko's Complaint does not comply with Rule 10(b), because it does not set forth her factual allegations in numbered paragraphs, the Court concludes in its discretion that

---

[3] A Rule 12(e) motion "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Merck did not identify any particular "details desired" in its Motion.

this does not preclude Merck from filing a response. As noted above, the crucial question for the Court is whether any procedural violations preclude Merck from understanding the nature of the claims against it and being able to respond, keeping in mind Rutko's *pro se* status. *See In re Pringle*, No. 21-5037, 2022 WL 125911, at *2 (E.D. Pa. Jan. 13, 2022) (explaining that Rule 8 and Rule 10 operate in tandem with the goal of requiring cognizable claims to which the defendants can respond on the merits); *see also Bullard v. Carney*, No. 21-1590, 2022 WL 294549, at *2 (E.D. Pa. Jan. 31, 2022) (same); *Kreis v. Northampton Cnty. Prison,* 564 F. Supp. 3d 359, 362 (E.D. Pa. 2021) ("Because no defendant could reasonably be expected to respond to it, the Second Amended Complaint will be dismissed for failure to comply with Rules 8 and 10."). Courts that have invoked a violation of Rule 10(b) as a basis for dismissing a *pro se* complaint have tended to do so in combination with other defects in the complaint that in combination made response impossible, or to discourage "shotgun" pleadings. *See e.g.*, *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (explaining that a "shotgun pleading" fails to comply with Rule 8(a), Rule 10(b), or both, and "fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests"); *Ball v. Oden*, No. 09-847, 2011 WL 6026892, at *5 (M.D. Pa. Dec. 5, 2011) (cited by Merck) (granting motion for more definite statement following remand in case with "vague" and "ambiguous" pleadings, in a case that had been "pending in the courts for two-and-one-half years" and in which the complaint "consist[ed] of pages of rambling unnumbered paragraphs" with unorganized allegations lumped together and asserted claims that had previously been dismissed). These circumstances are not present in Rutko's case. While responding to a *pro se* complaint can be challenging for a defendant, Merck is now clearly on notice—with the added benefit of Rutko's Response to their Motion and this Memorandum, both of which clarify the

already sufficient allegations of the Complaint—of the factual bases for Rutko's claims against them. The Court therefore concludes that it is fair to require Merck to respond to Rutko's Complaint to the best of its ability. *See Luntz v. Hileman*, No. 23-739, 2023 WL 8456120, at *2 (M.D. Pa. Dec. 6, 2023) (excusing Rule 10(b) violation, in light of plaintiff's *pro se* status and the fact that it was clear from the record the defendants understood the nature of the claims against them); *Mateo v. First Transit Inc.*, No. 19-17302, 2020 WL 4013547, at *3 (D.N.J. July 16, 2020) (declining to dismiss *pro se* complaint for failure to comply with Rule 10(b) because "the Court finds that Plaintiff's pleadings are not so unintelligible, such that Defendant is precluded from filing a responsive pleading" since it was "only eight pages long," "Plaintiff has divided the factual allegations in the Amended Complaint into separate paragraphs that generally relate to different sets of circumstances," and defendants had adequate notice of the causes of action against them); *Ball v. Oden*, No. 09-0847, 2010 WL 1903588, at *3 (M.D. Pa. May 10, 2010) (declining to dismiss nine-page complaint against thirty-four defendants based on Rule 10(b) violation, even though plaintiff "does not present her claims in numbered paragraphs, or even paragraphs for that matter" and where "reading the complaint is no easy task," because plaintiff was proceeding *pro se* and defendants could understand the nature of the allegations). Since the Complaint is sufficient in its current form, the Court will also deny Merck's request to treat Rutko's Response as an Amended Complaint.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Merck's Motion for a More Definite Statement and direct Merck to answer Rutko's Complaint. An Order follows.

**BY THE COURT:**

*<u>/s/ John M. Gallagher</u>*
**JOHN M. GALLAGHER, J.**