**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KARIN RUTKO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:24-cv-01187-JMG |
| | : | |
| MERCK SHARP & DOHME LLC, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                              June 30, 2026

## I.    OVERVIEW

Plaintiff Karin Rutko, proceeding *pro se*, brings failure to promote, failure to accommodate, and retaliation claims against her ex-employer, Defendants Merck Sharp & Dohme LLC and Merck & Co., Inc. (collectively, "Defendants"), the international subsidiary and United States corporate entity, respectively, under the Americans with Disabilities Act ("ADA"). *See generally* Compl. (ECF No. 2). Plaintiff's claims stem from Defendants first declining to evaluate Plaintiff for the Second Shift Lead position due to her disabilities and then, after finally awarding her the position, eliminating the role entirely. *See id.* Defendants have moved for summary judgment on all claims. *See generally* Defs.' Mem. of L. in Supp. of Mot. for Summ. J. ("Defs.' Mem. in Supp.") (ECF No. 68-1). For the reasons that follow, Defendants' Motion is **GRANTED**.

## II.     BACKGROUND[1]

### A.     Factual Background

Defendants first hired Plaintiff on May 3, 1999, in an entry-level position. *See* Statement

of Undisputed Material Facts in Supp. of Defs. Mot. for Summ. J. ("SUMF") ¶ 7 (ECF No. 68-3).

She had been in the Local 10-086 United Steel, Paper and Forestry, Rubber Manufacturing, Energy,

Allied Industrial and Service Workers Union (the "Union") since the start of her employment. *See*

*id.* ¶ 13. The terms of her employment were governed by a collective bargaining agreement (the

"CBA") negotiated by the Union and Defendants. *See id.* ¶ 14.

Under the CBA's terms, new positions that are posted and opened for bidding are awarded

to the most senior bidder unless Defendants determine that the most senior bidder cannot

physically perform the job duties when offered the position. *See id.* ¶¶ 16-18. If Defendants

implements a layoff, employees in an eliminated position may either select an open position or

---

[1] In response to a motion for summary judgment, the Court requires the nonmovant—here,
Plaintiff—to file "a separate 'statement of disputed facts' responding to the numbered paragraphs
set forth in the movant's statement of undisputed facts." *See* Policies and Procedures, Gallagher,
J. at § II.B.5.b. Plaintiff needed to explain her "basis for disputing the fact ***and cite evidence in the
record*** supporting" her position. *See id.* (emphasis added) Plaintiff also had to state additional facts
under the heading "statement of additional facts" that she believes precludes summary judgment.
*See id.*

The Court acknowledges that Plaintiff is *pro se*, but Plaintiff "cannot flout procedural
rules." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (explaining pro se litigants "must abide by
the same rules that apply to all other litigants" (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d
239, 244-45 (3d Cir. 2013)). The Court made clear in its Policies and Procedures that if Plaintiff
disputed a fact without citing supporting evidence, the facts as set forth by Defendants would be
deemed admitted. *See* Policies and Procedures, Gallagher, J., at § II.B.5.c.

Even construing Plaintiff's filings liberally, she did not comply with the Court's Policies
and Procedures. *See Boone v. Nose*, 530 F. App'x 112, 114 (3d Cir. 2013) (citing *Weaver v. Wilcox*,
650 F.2d 22, 26 (3d Cir.1981)). Plaintiff filed responses to Defendants' Statement of Undisputed
Material Facts, but she made no record citations. Many responses do not even align with
Defendants' Statement. Accordingly, the facts contained within Defendants' Statement of
Undisputed Material Facts are deemed admitted.

bump a less senior employee from that position. *See id.* ¶¶ 19-20. When a dispute occurs between Defendants and an employee, the dispute is governed by a grievance and arbitration procedure. *See id.* ¶¶ 21-22.

In 2007, Plaintiff suffered a workplace injury to her shoulder and neck, resulting in restrictions on the duties she could perform. *See id.* ¶ 26. Defendants accommodated those restrictions. *See id.* ¶ 27. In 2010, Defendants promoted Plaintiff to a Support Associate role. *See id.* ¶ 8. In 2014, Plaintiff was diagnosed with a chronic degenerative musculoskeletal disease of the shoulder and neck area. *See id.* ¶ 31.

In 2021, Frank Stowman, Associate Director for Sterile Supply Operations in the Varicella Support Services Area in Department 241, determined a need for a shift lead on the second shift. *See id.* ¶ 34. Defendants posted an opening for a Second Shift Lead on or about September 2021 *See id.* ¶ 36. Plaintiff bid on the position but was not awarded it. *See id.* ¶ 37. Defendants determined that Plaintiff could not physically perform the duties and awarded the position to a less senior employee, Mr. Mohammad Zahid, in October 2021. *See id.* ¶ 40.

The Union filed a grievance on Plaintiff's behalf on October 28, 2021. *See id.* ¶ 41. It went to arbitration on February 3, 2022. *See id.* ¶ 42. The arbitrator could not determine Plaintiff's qualification for the position and directed the parties to engage in the interactive process. *See id.* ¶ 43. This led to some of Plaintiff's work restrictions being lifted, with others remaining in place. *See id.* ¶ 49.

After those restrictions were lifted, and following other medical documentation and testing from Plaintiff's medical providers and evaluations issued by Defendants, Plaintiff took and passed

the Second Shift Lead assessment on December 7, 2022. *See id.* ¶¶ 50-55. Plaintiff was awarded the position on December 8, 2022 and started the position on January 2, 2023.[2] *See id.* ¶¶ 56-57.

As part of Defendants' annual production review, Director of Business Consulting for Global Manufacturing John Wilson reviewed the production needs for Department 241. *See id.* ¶¶ 58-59. Because production demands for the Varicella Support Area, where Plaintiff worked, decreased, Defendants reduced the headcount from 45 to 40. *See id.* ¶¶ 61, 63. As part of this reduction, Defendants eliminated the Second Shift Lead, resulting in Plaintiff and Mr. Zahid's positions being eliminated. *See id.* ¶¶ 64, 69. Plaintiff exercised her bumping rights and moved to a Support Associate role on the second shift. *See id.* ¶ 70. Plaintiff then requested and was granted a third-shift Support Associate position. *See id.* ¶ 71. The Second Shift Lead was not backfilled, and the department had 39 employees as of November 11, 2025. *See id.* ¶ 72. The Union did not grieve the staffing decreases. *See id.* ¶ 73.

On April 15, 2023, Plaintiff was approved and went on short-term disability leave due to medical issues. *See id.* ¶ 74. This leave was extended to October 13, 2023. *See id.* ¶ 75. Plaintiff failed to return to work after her long-term disability benefits were denied, and Defendants sent a letter on July 16, 2024, requiring Plaintiff to return to work within 60 days. *See id.* ¶¶ 78-79. Because Plaintiff still did not return to work, Defendants terminated Plaintiff's employment on November 16, 2024. *See id.* ¶ 81.

### B.    Procedural Background

Plaintiff filed a Charge of Discrimination with the EEOC on May 1, 2023, alleging discrimination based on her age, sex, and disability, based on her non-promotion and position

---

[2] Plaintiff alleges, without pointing to the record, that she began working on January 23, 2023. *See* Pl.'s Resps. To Defs.' Statement of Undisputed Facts, at 14 (ECF No. 75).

elimination. At this time, Plaintiff was still employed by Defendants and on short-term disability leave. The EEOC issued a Notice of Right to Sue on November 18, 2023, and Plaintiff filed this lawsuit on March 15, 2024.

The Parties engaged in discovery, which was repeatedly delayed and resulted in multiple Motions to Compel against the Plaintiff to produce relevant documents. On November 10, 2025, Defendants moved for summary judgment. *See generally* Defs.' Mem. in Supp. (ECF No. 68). On December 15, 2025, Plaintiff filed a response to the Motion for Summary Judgment, four days past her extended deadline. *See generally* Decl. of Karin Rutko in Opp'n to Defs.' Mot. for Summ. J. (ECF No. 73). After Defendants filed their reply, Plaintiff moved to file a supplemental declaration on December 30, 2025, twenty days past the deadline, to which Defendants responded on January 9, 2026. *See generally* Mot. for Leave to File Supp. Decl. (ECF No. 79); Defs. Merck Sharp & Dohme LLC and Merck & Co., Inc.'s Opp'n to Pl.'s Mot. for Leave to File Supp. Decl. (ECF No. 80).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this

stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party, Plaintiff in this case, must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, so a "district court may not rely solely on" them to justify a finding that a dispute of material fact exists. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal citation omitted).

In applying this standard, "the court must construe the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences." *Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*, 118 F.3d 178, 181 n.3 (3d Cir. 1997) (citing *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 433 n.10 (3d Cir. 1996)). At the summary judgment stage, the Court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see*

*also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the Court's task is to identify and explain the law governing the matter, and then, in light of that law, determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.    ANALYSIS

Plaintiff brings claims against Defendants for (1) discrimination under the ADA based on Defendants' failure to promote Plaintiff in October 2021, (2) discrimination under the ADA based on Defendants' alleged failure to reasonably accommodate Plaintiff's disability, and (3) retaliation based on Defendants' January 2023 elimination of the position Plaintiff sought. *See generally* Compl. (ECF No. 2). These claims arise from Defendants excluding Plaintiff from consideration for the Second Shift Lead and subsequently eliminating the role. Because Plaintiff's failure-to-promote and failure-to-accommodate claims are time-barred, and Plaintiff has not shown a protected activity she engaged in without a legitimate, non-retaliatory reason for Defendants' actions or by showing such reason was merely pretextual for the retaliation, Defendants are entitled to summary judgment on all of Plaintiff's claims.[3]

### A.  Time-Barred Claims

Plaintiff contends that Defendants failed to promote or accommodate her by refusing to award her the Second Shift Lead position, and without discussing her restrictions. *See* App'x of Exs. in Supp. of Defs.' Mot. for Summ. J. ("App'x"), at 164-65 (stating Defendants failed to accommodate by hiring someone with less seniority without discussing accommodations). After

---

[3] Defendants also sought summary judgment as to punitive damages. *See* Defs.' Mem. in Supp., at 25. Because the Court is granting summary judgment as to all Plaintiff's claims, the Court need not address punitive damages.

these discrete acts of discrimination, Plaintiff had 300 days to file ADA discrimination charges. *See Brown v. Tait Towers Mfg., LLC*, No. 5:21-CV-04573, 2022 WL 206177, at *3 (E.D. Pa. Jan. 21, 2022) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002))); *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 325, 329 (E.D. Pa. 2018) (acknowledging failure to accommodate is a discrete act ); *Stocker v. Green, Tweed & Co.*, No. CV 18-4503, 2020 WL 4437113, at *3 (E.D. Pa. Aug. 3, 2020) (recognizing failure to promote is a discrete act).

"ADA claims accrue at the time of the alleged unlawful employment practice," so Plaintiff had 300 days from Defendants' decision not to promote her and 300 days from Defendants' decision not to accommodate her to assert her claims. *See Azadpour v. AMCS Grp. Inc.*, No. CV 19-1968, 2022 WL 4110524, at *3 (E.D. Pa. Sept. 8, 2022), *aff'd,* No. 22-2923, 2023 WL 4044607 (3d Cir. June 16, 2023) (citations omitted). Because Defendants hired Mr. Zahid in October 2021, their alleged unlawful decisions occurred no later than October 2021. *See* SUMF ¶¶ 40-42. But Plaintiff filed her charge of discrimination on May 1, 2023—more than 500 days later. *See* App'x at 367. Because Plaintiff did not file charges with the EEOC within 300 days of Defendants deciding against promoting or accommodating Plaintiff, her failure to promote and failure to accommodate claims are time-barred. Defendants' motion as to these claims is **GRANTED**.[4]

---

[4] Plaintiff also filed a Motion for Leave to File Supplemental Declaration (ECF No. 79), seeking to introduce the declaration of Brian Cunningham. Because Mr. Cunningham's sworn statements only pertain to events occurring in 2021, the declaration is irrelevant to Plaintiff's surviving claim. Accordingly, the Court will deny Plaintiff's Motion (ECF No. 79).

## B. Retaliation

Plaintiff asserts a retaliation claim under the ADA, contending that Defendants retaliated against her by eliminating the Second Shift Lead position—the very position she was awarded in January 2023—in response to her union grievance and arbitration proceeding. *See* Compl. (ECF No. 2). The *McDonnell Douglas* burden-shifting framework governs ADA claims. *See Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023). Under this framework, Plaintiff must first establish a *prima facie* case of retaliation. *See id.* at 433. If she does, the burden shifts to Defendants to articulate a legitimate, non-retaliatory reason for the adverse action. *See id.* If the Defendants do so, the burden then returns to Plaintiff to show that that reason is merely pretextual. *See id.*

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See id.* (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). As to the causal connection, courts consider: (1) temporal proximity between the protected activity and the adverse employment action; (2) whether there is a pattern of antagonism following the protected conduct; and (3) whether the record, taken as a whole, raises an inference of causation. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017).

### 1. Plaintiff's Prima Facie Case

For purposes of this Motion, Defendants did not dispute that Plaintiff engaged in a protected activity. *See* Defs.' Mem. in Supp. at 18-22 (ECF No. 68-1). The dispositive question at the *prima facie* stage lies in whether Plaintiff has shown a causal connection between her grievance activity and the position elimination.

She has not. Plaintiff's protected activity concluded with the arbitration hearing on February 3, 2022. *See* SUMF ¶ 42. The Second Shift Lead position was not eliminated until January 2023, approximately eleven months later. *See id.* ¶ 69. Courts in this Circuit have consistently held that gaps of this duration, without more, linking the protected activity to the alleged retaliation, are insufficient to establish the causation element through temporal proximity. *See, e.g.*, *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015) (ten months not unduly suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months insufficient standing alone); *Bartos v. MHM Corr. Servs.*, 454 F. App'x 74, 78 (3d Cir. 2011) (eleven-month gap not unduly suggestive). This stands in sharp contrast to cases in which temporal proximity was found sufficient. *See, e.g., Kluender v. United States Liab. Ins. Co.*, No. CV 22-3650, 2025 WL 886949, at *6 (E.D. Pa. Mar. 21, 2025), *aff'd*, No. 25-1750, 2026 WL 674215 (3d Cir. Mar. 10, 2026) (finding six days between attending a deposition in an ADA proceeding and termination "unduly suggestive"). No such proximity exists here.

Furthermore, Plaintiff has not identified a pattern of antagonism following her protected activity. To the contrary, in the months following February 2022, Defendants engaged in the interactive process directed by the arbitrator, sought medical documentation to evaluate Plaintiff's restrictions, and, most importantly, awarded Plaintiff the very position she had sought once her restrictions were lifted in late 2022. *See* SUMF ¶¶ 44-57. These facts are fundamentally inconsistent with a retaliatory motive. *See Rompola v. Lehigh Valley Hosp.*, 2004 WL 503411, at *6 (E.D. Pa. Mar. 11, 2004) (no pattern of antagonism where the record showed good-faith engagement following the protected activity).

Plaintiff's retaliation theory rests solely on her personal belief that the position elimination targeted her. At deposition, she conceded: "***I have no documentation. I can't prove it, but I sure***

*can feel it.*" *See* App'x at 197 (emphasis added). Subjective belief, unsupported by evidence, does not and cannot create a genuine issue of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382-83 n.12 (3d Cir. 1990) (conjecture or speculation cannot defeat summary judgment).

Plaintiff cannot establish the causal element of a *prima facie* case of retaliation. Accordingly, summary judgment in Defendants' favor on the retaliation claim is warranted on this basis alone.

### 2. Defendants' Legitimate, Non-Retaliatory Reason

Even assuming Plaintiff had established a *prima facie* case, which she has not, Defendants have carried their burden of articulating a legitimate, non-retaliatory reason for eliminating the Second Shift Lead position. Defendants' Director of Business Consulting for Global Manufacturing, John Wilson, conducted his annual review of production needs for Department 241 in 2022. *See* SUMF ¶¶ 58-59. Through the review, Defendants determined that the Second Shift Lead position was no longer necessary given the reduced production schedule and reduced staffing and thus eliminated it in early January 2023. *See id.* ¶ 64. This explanation, a valid production-driven reduction in production force, is precisely the kind of legitimate business justification courts routinely credit at summary judgment. *See, e.g., Eaton v. Com. Health Sys., Inc.*, 631 F. Supp. 3d 236, 246-48 (M.D. Pa. 2022) (granting summary judgment where plaintiff and others were laid off due to a drop in patient volume); *Gill v. BH Media Grp., Inc.*, No. 16-9155 (RBK), 2019 WL 585427, at *11-12 (D.N.J. Feb. 13, 2019) (same, declining demand). Defendants' business reason is facially legitimate; therefore, Defendants have met their burden of production.

### 3.   Plaintiff Has Not Shown Pretext

Even if Plaintiff established causation, Plaintiff has not shown that Defendants' proffered reasoning is merely pretextual. To survive summary judgment on pretext, Plaintiff must identify evidence from which a reasonable jury could either (1) disbelieve Defendants' articulated legitimate reason or (2) believe that an invidious reason was more likely that not a motivating or determinative cause of the position elimination. *See Terrell v. Main Line Health, Inc.*, 320 F. Supp. 3d 644, 658 (E.D. Pa. 2018)). Plaintiff can do this by pointing to weaknesses, implausibilities, inconsistencies, or contradictions in Defendants' reasons. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Both of Plaintiff's arguments for pretext fail. First, Plaintiff contends that only her position was eliminated, suggesting that the stated business reason was fabricated. This assertion is not just conclusory but factually incorrect. The record establishes that multiple Support Associate positions were eliminated, including both Plaintiff's and Mr. Zahid's lead roles. *See* SUMF ¶¶ 64, 67, 69. Notably, at her own deposition, Plaintiff acknowledged that production slowdowns lead to layoffs and bumping, explaining "***one department might get slow and then they lay off people, and people just bump, go here and there***." *See* App'x at 152. (emphasis added). That is precisely what occurred here. At no time does Plaintiff point to anything in the record to support the allegation that the business reason was fabricated or that it was pretextual; she merely asserts her feelings as the basis for her allegations.

Second, Plaintiff testified that she personally did not observe any drop in production. *See id.* at 197-98. But Plaintiff's own perception of production volume cannot stand alone as evidence of pretext. Plaintiff did not know the actual production figures for her department, and she was unable to ascertain who made the decision to eliminate the position. *See* SUMF ¶¶ 62, 65-66;

App'x at 193. Plaintiff's inability to identify a decision-maker with a retaliatory motive, combined with her admission that she cannot prove any retaliatory theory, forecloses any pretext finding. *See Matos v. Merck & Co*, 643 F. App'x 187, 191 (3d. Cir. 2016) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (summary judgment is only avoidable by showing either evidence to disbelieve the employer's articulated business legitimate business reasons, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action).

Plaintiff has not identified a single inconsistency in Defendants' explanation, nor any evidence that the position elimination was driven by anything other than objective production-driven business decisions and economics. Not once does Plaintiff show a single piece of the record to support that her argument that the reason Defendants gave was merely pretext. Plaintiff's retaliation claim therefore fails at the pretext stage as well. Summary judgment in Defendants' favor is warranted on the Plaintiff's retaliation claim.

## V.    CONCLUSION

The Court finds that no reasonable factfinder could reach a judgment for the Plaintiff on any of the Plaintiff's claims, even drawing all inferences in her favor. As the non-moving party, Plaintiff was required to present evidence sufficient to create a genuine dispute of material fact, and she has not done so for any of her claims. Accordingly, the Court **GRANTS** summary judgment for Defendant on Plaintiff's claims.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge